IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAAN CILLIERS, DAPHNE CILLIERS, WORLD WIFI NETWORK, INC., and SUNRISE GLOBAL MARKETING, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 18 C 2428 |
| v. | ) ) | Judge Ronald A. Guzmán |
| COBALT HOLDINGS, INC., | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

For the reasons explained below, defendant's motion to dismiss the Second Amended Complaint is denied.

**BACKGROUND**

This is a diversity action in which plaintiffs, Christiaan Cilliers, Daphne Cilliers, World WiFi Network, Inc. ("WWN"), and Sunrise Global Marketing, Inc. ("SGM"), bring fraud, breach of contract, and several other state-law claims against defendant, Cobalt Holdings, Inc. ("Cobalt"). A brief summary of plaintiffs' allegations is as follows. Plaintiffs claim that Cobalt fraudulently induced them to enter into agreements in April 2016 to sell to Cobalt all of their business assets, consisting of, among other things, a roaming Wi-Fi network in thirteen Caribbean countries and Mexico, as well as other intellectual property that plaintiffs had developed. According to plaintiffs, as part of its scheme, Cobalt misrepresented material facts to them, including the existence, extent, and licensure status of its own purported Wi-Fi network in the Caribbean and that Cobalt had the intent and ability to expand plaintiffs' Wi-Fi network to over 1,000 Wi-Fi hotspots within two years. In reality, plaintiffs say, Cobalt had no licenses in the Caribbean to develop and expand the network

and wanted to acquire plaintiffs' assets only to attract additional equity investors as part of a planned round of equity financing valued at millions of dollars. Plaintiffs allege that Cobalt also acted in bad faith and engaged in multiple instances of wrongdoing, including failing to pay them everything they were owed under the agreements; failing to transfer to them 20,513 shares of Cobalt stock valued at approximately $200,000.00; preventing the Cillierses from receiving additional "earn out" shares of Cobalt stock valued at over $450,000.00; obstructing the expansion of the Wi-Fi network and ultimately abandoning it; repeatedly failing to pay post-closing compensation to the Cillierses; wrongfully terminating the Cillierses' employment with Cobalt in order to avoid paying them severance and additional stock shares; and, almost immediately after this lawsuit was filed, canceling and converting 20,513 shares of Cobalt stock that had been issued to the Cillierses as part of the transactions.

Plaintiffs assert the following claims in their Second Amended Complaint: common-law fraud (Count I); promissory fraud (Count II); breach of contract (Counts III and IV); specific performance (Count V); violations of the Illinois Wage Payment and Collection Act (Counts VI and VII); conversion (Count VIII); and imposition of a constructive trust (Count IX). Cobalt moves to dismiss most of plaintiffs' claims.[1]

## LEGAL STANDARDS

When evaluating the sufficiency of a complaint, the Court construes the complaint in the light most favorable to the plaintiff, accepts as true all well-pleaded facts therein, and draws all

---

[1] Although Cobalt's motion states that it is directed to the Second Amended Complaint, its arguments are directed to the First Amended Complaint. Cobalt refers to plaintiffs' constructive-trust claim as "Count VIII," and it was so labeled in the First Amended Complaint. In the Second Amended Complaint, however, Count VIII is a conversion claim, and Count IX seeks the imposition of a constructive trust. Cobalt's motion does not contain any argument concerning the conversion claim.

reasonable inferences in plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted). It "does not need detailed factual allegations" but must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

### A. Common-Law Fraud (Count I)

In support of its request for dismissal of Count I, Cobalt points to certain provisions of the contract between WWN and Cobalt (the "WWN Agreement"). The WWN Agreement states that its indemnification provisions (which include Cobalt's obligations to indemnify WWN and its directors and officers) are the exclusive rights and remedies of the parties for any losses arising out of any breach of representations, warranties, covenants, or obligations made in the agreement, except for the remedies of specific performance, injunction, and other equitable relief; provided, however, that the parties shall not be deemed to have waived any rights to the extent they cannot be waived under applicable law or in instances of fraud. (ECF No. 10-1, WWN Agreement §§ 5.2, 5.7.) It also states that a party seeking indemnification under the contract must give notice of any such claim prior to the first anniversary of the date of the contract. (*Id.* § 5.3(a).) Cobalt argues that Count I should be dismissed because "[n]o such notice of claim was made by Plaintiffs" prior to the anniversary date. (ECF No. 20, Def.'s Mot. Dismiss at 2.) This argument is improper because it is a factual assertion outside the pleadings, which the Court does not consider on a motion to

3

dismiss. *See, e.g.*, *Doss v. Clearwater Title Co.*, 551 F.3d 634, 639 (7th Cir. 2008). And, in any event, the plain language of the indemnification provision excepts fraud claims. Cobalt contends that plaintiffs have "intentionally mispled" Count I and that it is not a true fraud claim, (Def.'s Mot. Dismiss at 2), but this argument goes to its merits, which the Court does not consider on a motion to dismiss.

Furthermore, Cobalt appears to argue that an integration clause in the contract bars plaintiffs' claim, and also contends that to the extent that plaintiffs seek punitive damages, they "are not recoverable according to the Agreement." (Def.'s Mot. Dismiss at 3.) Cobalt fails to develop these arguments or cite any supporting authority and therefore waives them. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (perfunctory and unsupported arguments are waived).[2]

### B. Promissory Fraud (Count II)

Cobalt contends that Article 3.1 of the agreement between it and SGM (the "SGM Agreement") "undercuts" plaintiffs' claim that they relied on any alleged misrepresentations of material fact made by Cobalt; Article 3.2(c) precludes SGM's promissory fraud theory; and Article 6.9's integration clause bars any promissory fraud claim. (Def.'s Mot. Dismiss at 3-4.) Cobalt fails to develop these arguments or cite any supporting authority and therefore waives them.

### C. Breach of the WWN Agreement (Count III), Breach of the SGM Agreement (Count IV), and Specific Performance of the SGM Agreement (Count V)

In Count III, which is pleaded in the alternative to Counts I and II, WWN alleges that Cobalt breached the WWN Agreement. In Count IV, which is pleaded in the alternative to Counts I and

---

[2]In fact, Cobalt's entire motion is unsupported by any citation to authority. In its reply brief, Cobalt attempts to develop some of its arguments, makes new arguments, and provides some citations (but largely only for general propositions of law, not for how the law applies to the instant allegations). The failure to develop or make an argument until the filing of a reply brief constitutes waiver. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005).

II, SGM and the Cillierses allege that Cobalt breached the SGM Agreement. In Count V, which is pleaded in the alternative to Counts I, II, and IV, SGM and the Cillierses seek specific performance of the SGM Agreement.

In support of its request for dismissal of these claims, Cobalt again relies on the requirement in the agreements that notice of an indemnification claim be made prior to the first anniversary of the date of the agreement. Cobalt argues that the claims are barred because plaintiffs failed to give notice of their claims within that time frame. As discussed above, this argument is improper on a motion to dismiss, and plaintiffs point out that they have alleged compliance with all material terms of the agreements (or, alternatively, stood ready, willing, and able to perform their obligations but were prevented from doing so by Cobalt). (ECF No. 31, Pls.' Resp. at 7; ECF No. 10, 2d Am. Compl. ¶¶ 74, 82, 91.) Furthermore, with respect to Count V, the indemnification provision of the SGM Agreement excepts specific-performance claims. (ECF No. 10-2, SGM Agreement § 5.7.)

To the extent that Cobalt is arguing that the Cillierses cannot sue on the SGM Agreement because they were not parties to that contract, Cobalt waives the argument by failing to develop it or to cite pertinent authority.

**D.**     **Illinois Wage Payment and Collection Act (Counts VI and VII)**

In Counts VI and VII, the Cillierses claim that they had enforceable employment agreements with Cobalt and that Cobalt violated the Illinois Wage Payment and Collection Act ("IWPCA") by failing to pay them wages for certain periods of time; severance pay; and shares of Cobalt stock. Christiaan Cilliers also alleges that Cobalt failed to give him stock options. Cobalt cites the arbitration provisions of the employment agreements and asserts, without elaboration, that if plaintiffs "have complaints regarding their agreement with Cobalt, they need to be addressed in

5

arbitration and not as part of the Complaint." (Def.'s Mot. at 6-7.) As with Cobalt's previous undeveloped and unsupported arguments, this argument is waived.[3]

### E.  Constructive Trust (Count IX)

In Count IX, plaintiffs seek the imposition of a constructive trust on 87,180 shares of Cobalt common stock that they allege were to be issued to them pursuant to the SGM Agreement. In its motion, Cobalt offers several musings about this claim and plaintiffs' available remedies, presented in a stream-of-consciousness manner. To the extent any of these undeveloped and unsupported observations are arguments for dismissal, they are waived.

### CONCLUSION

Defendant's motion to dismiss the Second Amended Complaint [20] is denied.

**DATE**:  October 18, 2018

_____
**Ronald A. Guzmán**
**United States District Judge**

---

[3]In response, plaintiffs assert that because Cobalt never moved to compel arbitration and instead participated in discovery and other proceedings in this case, including having filed a motion to dismiss, Cobalt waived its right to demand arbitration. Plaintiffs also appear to contend that their employment agreements are incorporated into the SGM Agreement, which does not contain an arbitration clause and provides that the parties consent to the jurisdiction of any federal court in the event any dispute arises out of the agreement or any of the transactions it contemplates. According to plaintiffs, the SGM Agreement "contemplated" their employment agreements. In its reply, Cobalt fails to respond to either of these arguments and does not discuss the IWPCA claims at all.